KANNER, Judge.
Seven beverage licenses held by petitioner, Damar Corporation were revoked through separate but identical orders entered by the Director of the State Beverage Department of Florida because of asserted violations of Florida statutes and beverage department administrative orders. The petitioner was found guilty of five violations, and the director dismissed two other charges which had been directed against it. Because of the like issues, findings of fact, and orders of revocation, the orders have been consolidated for purpose of review via petition for writ of certiorari here sought by Damar Corporation.
The violations found by the director were (1) that petitioner knowingly employed at its licensed places of business James W. Donofrio, who had been convicted in the last past fifteen years of a felony in this state; (2) that Dorothy Donofrio, Meyer Raffish, Harry Green-berg, and Sophie Greenberg, officers or directors or stockholders of Rio Liquors, Inc., continued to have an interest directly or indirectly in petitioner’s corporation and the licensed places of business operated by it in violation of administrative order of the director dated December 31, 1956, in acceptance of stipulation and cash compromise offered by Rio Liquors, Inc.; (3) that petitioner failed to report on or about October 19, 1961, to the district supervisor a complete listing of all employees working for it at its licensed places of business pursuant to administrative order, in that it omitted the name of its employee, James W. Donofrio; (4) that on or about Oc *657 tober 28, 1961, petitioner failed to require all of its employees to report to the district supervisor for the purpose of having them fingerprinted pursuant to administrative order, in that it failed to have its employee, James W. Donofrio, report for fingerprinting; and (5) that petitioner entered into a conspiracy with James W. Donofrio, Dorothy Donofrio, Meyer Raffish, Harry Greenberg, and Sophie Greenberg to violate the administrative order of December 31, 1956.
For clarity, it is well to set out the salient facts connected with the violations found by the director. Rio Liquors, Inc., is the former owner of five of the beverage licenses here involved. By letter of October 1, 1956, to the director, a cash compromise had been offered by that corporation under the then section 561.53, Florida Statutes, in settlement of five administrative violation cases which had already been heard by the director. The director, by letter of that same date, stated that the settlement offer would be accepted and the cases dismissed if, within sixty days, the sums offered were placed in escrow and if during that time petitioner made a bona fide sale of the businesses, including all five licenses, “to a person who is not an officer, director or stockholder of Rio Liquors Inc., or to a partnership, none of the partners of which are an officer, director or stockholder of Rio Liquors Inc., or to a corporation, none of whose officers, directors or stockholders, at the time of such sale, are officers, directors or stockholders of Rio Liquors Inc.” If such a bona fide sale were not negotiated during the sixty day period, the director stated that he would then reject the cash compromise offer and revoke all five licenses.
Subsequently, on December 31, 1956, the director entered an administrative order that he had agreed to accept the compromise “provided a bona fide sale was made of the entire licensed premises, to a person, firm or corporation having no interest in Rio Liquors, Inc.; that said sale has been made and said cash compromise settlement has been paid.” (Emphasis added.) The charges against Rio Liquors, Inc., were accordingly dismissed.
The sale in question had been made to petitioner. James W. Donofrio, who for many years was president of Rio Liquors, Inc., was on the payroll of petitioner in 1957. He received considerable sums from it as compensation and from time to time made sizeable loans to it. Loans were also made by Dorothy Donofrio, wife of James W. Donofrio, and by Meyer Raffish, Harry Greenberg, and Sophie Greenberg, who were officers, directors, or stockholders in Rio Liquors, Inc. Later, the four persons last named were among those openly serving in official, stockholding, or directorial capacities in petitioner. These same persons, along with Donofrio, were also interested and held like positions in two other corporations which owned or leased property occupied by certain of the licensed premises of petitioner.
Donofrio, however, had dissociated himself from Rio Liquors, Inc., in 1956 subsequent to a holding by the state beverage director that a certain out-of-state conviction against Donofrio involved moral turpitude prohibiting his being an officer of a corporation holding a beverage license. Subsequently, Donofrio received a full pardon and restoration was made to him of any rights in Florida that he may have lost because of that conviction. There followed a series of letters on the subject of Donofrio’s status with the beverage department as this affected his employment by a licensee in the light of the out-of-state conviction. The first shown by the record is one from his then counsel under date of November 8, 1957; and one dated December 29, 1958, was from an assistant director to the attorney who represented petitioner at the hearing. This letter stated that the department had no legal objection to Dono-frio as a vice-president of petitioner but cautioned as to the necessity for additional fingerprinting of him if and when he might become an officer of the licensee corporation.
*658 Donofrio never became an officer of petitioner. Less than two months later, in February of 1959, he was convicted in the ■Criminal Court of Record of Hillsborough ■County under the second count of an information. The first count charged him with feloniously keeping and maintaining a .-gambling house; the second count, under ■which he was found guilty, charged him with conspiring to keep and. maintain a •gambling house. Petitioner’s own records ■show that, during a period of time subse■quent to the Hillsborough County conviction, he was in petitioner’s employ.
Two administrative orders served on petitioner on October 14, 1961, required, respectively, that petitioner report in five days from its receipt to the district supervisor a complete list of all employees working at its licensed places of business and that it have all its employees, within fourteen days from its receipt, report for fingerprinting. On October 13, 1961, Dono-frio ceased to be an employee of petitioner. The next day, the two orders were served ■on Dorothy Donofrio as general manager ■of petitioner. Donofrio was neither listed nor fingerprinted in response to those two ■orders.
Section 561.29, Florida Statutes, F.S.A., provides with respect to revocation and ■suspension of license:
“(1) The director is given full ■power and authority to revoke or suspend the license of any person, firm or •corporation holding a license under the beverage law, where it is determined ■or found by the director upon sufficient ■cause appearing of:
“(a) Violation by the licensee, his or its agents, officers, servants or employees, on the licensed premises, or •elsewhere while in the scope of employment, of any of the laws of this state, •or of the United States * * *.
******
“(e) Violation by the licensee, and, if a corporation, by any officers thereof of any rule or rules promulgated by the director in accordance with the provisions of this chapter, or a violation of any such rule by any agent, officer, servant or employee of the licensee on the licensed premises or in the scope of such employment.”
Section 561.11, Florida Statutes, F.S.A., further provides:
“The director shall have full power and authority to make, adopt, amend or repeal such rules, regulations or administrative orders in pursuance of the purposes of the beverage laws, or reasonably necessary for, or calculated to facilitate, the enforcement or administration of the provisions thereof as may be appropriate, and such rules, regulations or orders shall have the full force and effect of law.”
It should here be commented that the character of a proceeding such as this is administrative, equitable in nature, and not criminal. Violation found by the director upon sufficient cause can result in revocation or suspension by him of the beverage license of the licensee violator. Penalty upon conviction of a criminal violation of the beverage law, assessable by a trial court, is another matter.
Appeal points advanced by petitioner assert that it did not knowingly employ a person who had been convicted in the last past fifteen years of a felony in this state; that the revocation of seven licenses constitutes unreasonably harsh punishment; that the intent of the December 31, 1956, administrative order was not to preclude interest in petitioner, subsequent to the sale, by the certain persons who prior to that had an interest in Rio Liquors, Inc.; that the record does not show that Donofrio was an employee of petition on either of the dates required by administrative orders for listing and fingerprinting of its employees; and that the record does not support the finding of conspiracy to violate an administrative order.
*659 With respect to the first violation found by the director, petitioner relies upon its contention that it did not “knowingly” employ one who had been convicted of a felony.
Section 562.13, Florida Statutes, F.S.A., provides that it shall be unlawful for a licensed vendor to knowingly employ any person in the place of business of such vendor who does not meet the qualifications required of licensees. Section 561.15, Florida Statutes, F.S.A., specifies that no license under the beverage law shall be issued to any person who has been convicted in the last past fifteen years of any felony in this state. Petitioner does not dispute that such a conviction has been proved but asserts that it believed the offense to have been a misdemeanor. However, the second count of the information against Donofrio charged conspiracy to commit the same offense as charged in the first count, that of feloni-ously keeping and maintaining a gambling house, pursuant to section 849.01, Florida Statutes, F.S.A. The penalty for violation of this section is that of a felony. One found guilty of conspiring to commit a felony is guilty of a felony. Section 833.04, Florida Statutes, F.S.A.
It will be recalled that petitioner, on October 13, 1961, terminated the employment of Donofrio, who by the documentary evidence had been in its employ at least during two quarters of 1961 following the February, 1959, conviction. Dorothy Donofrio, speaking as general manager of petitioner, stated under cross-examination, “Well, he was a controversial person. We didn’t know his status and we figured until we had it clarified it would be the best thing for him to resign.” At another point in the testimony, she explained, “When this question came up, we had to have every employee fingerprinted, we figured something was in the air and the best thing for him to do was for him to get out of the whiskey business until we had it clarified.”
Thus, Mrs. Donofrio, petitioner’s general manager, using the pronoun “we”, gave testimony indicating knowledge that there was reason to avoid fingerprinting of Donofrio and the listing of his name as an employee. This points to knowledge also that these revelations for some recognized reason would give rise to distasteful consequences. It must be emphasized that the relationship of Dorothy Donofrio to James. W. Donofrio was a dual one, that of his wife and that of general manager of the-corporation employing him. Donofrio was represented by counsel in the trial leading-to his conviction. The director, evaluating the evidence, had before him facts showing the long and continuous association between Donofrio and petitioner’s principals. We sustain his determination that petitioner knowingly employed a convicted felon.
The administrative order of December 31, 1956, is the subject of two violations found' by the director. These are interrelated in-that finding number 2 asserts violation of the order in question, while finding number 5 charges conspiracy to violate, with both findings involving the same persons, except that Donofrio’s name is added to the finding upon the subject of conspiracy. The-substance of these findings is that subsequent to the sale by Rio Liquors, Inc., to-Damar Corporation, Dorothy Donofrio, Raffish, and the Greenbergs continued to have an interest directly or indirectly in petitioner in violation of this order and that petitioner entered into a conspiracy with these persons, along with Donofrio, to violate the December 31, 1956, administrative order. Section 562.23, Florida Statutes, F.S.A., makes it unlawful to conspire to-violate any of the provisions of the beverage law.
It is petitioner’s position that in the letter of October 1, 1956, wherein a bona fide sale of the licensed premises of Rio Liquors, Inc., was required by the director, the words, “at the time of such sale” comprise the key which, after the sale had been effectuated, unlocked the prospective bar against officers, stockholders, or directors of Rio Liquors, Inc., from being interested in any corporation which might become the *660 purchaser. Thus, it is urged that the prohibited personnel of Rio Liquors, Inc., could become interested in Damar Corporation, the purchaser. In support of this interpretation, petitioner says that such intent was evinced through the letter from an assistant director of the beverage department to petitioner’s then counsel under date of December 29, 1958, stating that the department had no legal objection to Donofrio’s becoming a vice-president of petitioner. It is further argued that the order itself consisted of a finding that the sale had been made and the cash compromise settlement had been paid and that, because of this, it could not be violated. Conversely, the director asserts that the critical portion of the order in question and of the October 1, 1956, letter which preceded it was the part setting out that a bona fide sale was required as a condition, predicated upon the requirement that none of the specified personnel of Rio Liquors, Inc., could be interested in the purchaser. He explains that the letter relied upon by petitioner concerned Donofrio’s out-of-state conviction and was one of a series of letters, the intent of which was directed to the question of whether or not this would prevent Donofrio from being connected with a licensed beverage operation.
As to five of the seven licenses here involved, the director, in his letter of October 1, 1956, setting up the requisites under which the compromise offer of Rio Liquors, Inc., would be accepted, declared that, if within sixty days such bona fide sale of all the licensed premises had not been negotiated, he would then reject the cash compromise offer and revoke all five licenses. Therefore, by purported compliance, Rio Liquors, Inc., escaped revocation of five of the subject licenses. Despite this, the principals of Rio Liquors, Inc., became interested also in petitioner following the supposedly bona fide sale. The documentary evidence shows that subsequent to the sale, Dorothy Donofrio, Raffish, and the Green-bergs occupied the prohibited positions or status with petitioner. Sizeable loans were made to petitioner by all these individuals; petitioner’s records, under notes and loans payable, indicate also, as to sums advanced by Donofrio, that a final balance of $24,-248.85 was due him. Additionally, those persons were also principals of Midtown Liquors, Inc., and Bridge Realty Corp., which owned or leased property occupied by certain of the licensed premises of petitioner, with James W. Donofrio as president of one of those corporations and secretary-treasurer of the other. The administrative order in question, forbidding fusion of the official, directorial, or stockholding personnel of Rio Liquors, Inc., into petitioner, the purchasing corporation, would be meaningless and purposeless under a construction that, by the preclusions stated, the director was defining the bona fide sale necessary to avoid revocation of all five licenses to mean that it should apply only to the time of the sale itself. Of course, the lack of the bona fides of the sale became apparent through discovery subsequent to the administrative order of December 31, 1956.
Since it appears that the principals of Rio Liquors, Inc., did continue to have an interest in petitioner following the sale and that they, together with Donofrio, planned to thwart the bona fide sale requirement in violation of administrative order of December 31, 1956, and in violation of the beverage conspiracy statute, we find no error as to the findings of the director in this regard.
Concerning the violations with respect to the administrative orders requiring petitioner to furnish a listing of all its employees and to have them report for fingerprinting, we cannot say that the record supports the findings of the director upon these subjects, since at the time the orders were served and at the time specified for execution of them, Donofrio was no longer in petitioner’s employ.
In sum, the finding of the director incorporated in each of the seven orders that petitioner knowingly employed one convicted of a felony in Florida in the last past *661 fifteen years is sustained, as are the findings of violation and conspiracy to violate the December 31, 1956, administrative order. The findings in each of the seven orders that petitioner violated the two administrative orders requiring listing and fingerprinting of all its employees are not sustained. Accordingly, these two findings contained in each of the orders are hereby quashed. The cause is remanded to the director for modification of the orders in conformity to this opinion and for consideration of whether or not, in the light of these modifications, the penalties assessed should be modified.
It is so ordered.
SMITH, C. J., and ALLEN, J., concur.